IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COYOTE LOGISTICS, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>BEE WORLD INC. d/b/a SUNRISE LOGISTICS,<br><br>     Defendant. | Case No. 23 C 0087<br><br>Honorable Sunil R. Harjani |

### MEMORANDUM OPINION AND ORDER

In this lawsuit, Coyote Logistics brings one claim for common law breach of contract against Sunrise Logistics. Sunrise moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that Coyote's claim is preempted by the Carmack Amendment to the Interstate Commerce Act and further that Coyote failed to provide sufficient notice of the claim pursuant to the Carmack Amendment and its accompanying regulations. For the reasons stated below, the Court finds that Coyote's claim is not subject to the Carmack Amendment and Sunrise's motion [20] is denied.

### Background

Coyote, a freight broker, alleges that it entered into a Broker-Carrier Agreement (BCA) with Sunrise (a motor carrier) to deliver a load of cargo on behalf of its customer, OneSource Distribution. Coyote states that it tendered a load of cargo to Sunrise for transportation from New Jersey to California. Coyote alleges that, when it was tendered, the cargo was in good order and condition. While in transit, however, the tractor-trailer transporting the cargo was in an accident and the cargo was lost. Coyote paid OneSource $137,906.13 for the lost cargo and demanded Sunrise indemnify it under the BCA's indemnity clause. Sunrise did not, and thus Coyote asserts that Sunrise is in breach of the BCA.

### Legal Standard

Sunrise moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not

necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

In its motion to dismiss, Sunrise argues that Coyote's state law claim for breach of contract should be dismissed because it is preempted by the Carmack Amendment, 49 U.S.C. § 14706. The Carmack Amendment generally preempts "state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). "The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). Before the Amendment, there were disparate carrier liability schemes among the states, which allowed carriers to limit or disclaim liability, depending on the state. *REI*, 519 F.3d at 697. The Carmack Amendment solved this problem by creating "a nationally uniform rule of carrier liability concerning interstate shipments." *Id.* (quoting *North Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996)). Now a carrier is "liable to the *person entitled to recover* under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1) (emphasis added). As a result of the Carmack Amendment, shippers can be confident that the carrier will be liable for any damage that occurs, and carriers can adequately gauge and insure against risks. *REI*, 519 F.3d at 697. Sunrise argues that Coyote is trying to assert a state law cause of action for breach of contract based on lost or damaged cargo, which is preempted by the Carmack Amendment. In turn, Coyote contends that because it is a broker and not the shipper, its claims are not preempted by the Carmack Amendment.

To ascertain whether Coyote's claim is preempted by the Carmack Amendment, it is important to understand how Sunrise, Coyote, and OneSource fit into the statutory scheme. There is no dispute that Sunrise is a "motor carrier" as defined by the Interstate Commerce Act as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). It is also undisputed that OneSource is an "individual shipper," which is defined as any "person who: (A) is the shipper, consignor, or consignee of a household goods shipment; (B) is identified as the shipper, consignor, or consignee on the face of the bill of lading; (C) owns the goods being transported; and (D) pays his or her own tariff transportation charges." *Id.* § 13102(13). Lastly, the Interstate Commerce Act defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or

arranging for, transportation by motor carrier for compensation." *Id.* § 13102(2). Coyote alleges in its Complaint that it is a broker.

The next step is to evaluate the rights and obligations granted to each role under the plain language of the Carmack Amendment, which states:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading.

49 U.S.C. § 14706(a)(1). Importantly, the Carmack Amendment does not reference brokers when discussing liability. Instead, it notes that carriers are "liable to the person entitled to recover under the receipt or bill of lading." *Id.* As defined by the Interstate Commerce Act, it is the shipper, not the broker, who is on the bill of lading and is entitled to recover under the Carmack Amendment. Thus, under a plain reading of the Carmack Amendment, the broker has no right to sue for damages because it does not appear on the bill of lading.

Looking to case law, the Seventh Circuit has not yet addressed the question of whether a broker is a "person entitled to recover" under the Carmack Amendment. In cases where the Seventh Circuit has considered a broker's rights under the Carmack Amendment, the broker was assigned the rights of the shipper. For example, in *REI*, the defendant was a freight broker who indemnified and paid the shipper for the lost cargo and in return, was assigned the shipper's right to recover from the carrier. *REI*, 519 F.3d at 696. The broker then determined that the carrier was responsible for the loss and pursuant to its contract with the carrier, withheld the amount it paid the shipper. The carrier then alleged a breach-of-contract claim against the broker, which the district court held was preempted by the Carmack Amendment. The Seventh Circuit reversed, holding that the "Carmack Amendment only preempts state and common law remedies inconsistent with the federal Act" and does not affect suits "by a carrier against a 'person entitled to recover' for non-payment[.]" *Id.* at 698 (citations omitted). The difference here from *REI* is that Coyote, the broker, is trying to enforce a contract claim under the BCA against the carrier (Sunrise) instead of the carrier trying to enforce a contract claim against a broker who was standing in for the shipper. Applying the logic from *REI*, the Complaint does not allege that Coyote was assigned OneSource's rights or is standing in for OneSource in this litigation. Further, the Complaint does not allege that Coyote as the broker had a right to recover under the bill of lading for this cargo. Thus, if Coyote cannot recover under the Carmack Amendment, it follows that then its common law remedies are not inconsistent with Carmack and its claims cannot be barred by the Carmack Amendment.

Moreover, while the Seventh Circuit has not decided the question of whether a broker's breach of contract claim is preempted by the Carmack Amendment, courts in this district have held that they are not. In *Traffic Tech, Inc. v. Arts Transportation, Inc.*, the broker brought a breach of contract claim for indemnity against the carrier after the broker had paid the shipper for the lost

3

cargo. 2016 WL 1270496, at *1 (N.D. Ill. Apr. 1, 2016). The court held that because the broker was not assigned the shipper's rights and did not appear on the bill of lading, and instead was suing the carrier under a separate contract, the broker's breach of contract claim was not preempted by the Carmack Amendment. *Id.* at *3. Similar to *Traffic Tech*, Coyote alleges that it paid OneSource for the lost cargo and sought indemnification from Sunrise under the BCA. Since Coyote is not asserting OneSource's rights in its claim and, absent any allegation in the Complaint that it is entitled to recover under the bill of lading, its claim is not preempted by the Carmack Amendment.

The absence of any language in the BCA granting the broker the right to sue under Carmack is also telling. In *Transco Lines v. Extra Logistics, Inc.*, the court found that absent any authority saying that the broker may bring a claim under the Carmack Amendment, "it follows that the Carmack Amendment does not preempt [the broker] from bringing a breach of contract claim against [the carrier]." 2018 WL 3993791, at *3 (N.D. Ill. Aug. 21, 2018). There, the broker attempted to bring a Carmack claim against the carrier, but the court found that brokers were not entitled to bring Carmack suits and that the language in the parties' agreement only imposed Carmack Amendment liability on the carrier. The broker argued that the parties' agreement affirmatively opted into Carmack Amendment obligations. The court analyzed the language of the agreement which provided: "CARRIER assumes the liability of a common carrier (i.e. Carmack Amendment liability) for loss, delay, damage to or destruction of any and all of Customer's goods or property while under CARRIER's care, custody to control." *Id.* The court found that this only acknowledged the carrier's liability under the Carmack Amendment and did not say that the broker could bring a claim against the carrier under the Carmack Amendment. Here, Sunrise points to language in Section 9(a) of the BCA which states that the "Agreement is subject to and governed by" the Carmack Amendment. Doc. [27] at 3. However, this is not all the language related to Carmack in the BCA. Section 9(a) of the BCA provides:

> BROKER and BROKER'S Customers specifically reserve all rights and remedies conferred by 49 U.S.C. § 14706, and this Agreement is subject to and governed by said statute. Except as otherwise specifically provided in this Agreement, CARRIER agrees that in the transportation of all goods hereunder, it assumes the same liability as that of a common CARRIER for full actual loss, subject to the provisions of 49 U.S.C. § 14706, ("Carmack Amendment") and 49 CFR Part 370 (claim regulations). BROKER may withhold as setoff any payment due to CARRIER pursuant to this Agreement, in whole or in part, to: satisfy advances made to or on behalf of CARRIER, to satisfy any debt owed to BROKER by CARRIER, or to satisfy any cargo damage claim which CARRIER has not paid or denied for a legally valid cause or reason within ninety (90) days of presentation of the claim.

Compl. [1-1] at 6. This language indicates that the Parties intended for their agreement to be governed by the Carmack Amendment. But it then goes on to describe Sunrise's liability under the Carmack Amendment and gives Coyote a right to setoff. These are important provisions in the event of a dispute and gives the parties some options to deal with it. However, the paragraph does

4

not specifically grant Coyote the right to sue Sunrise under the Carmack Amendment. Without that express language, simply stating that the BCA is subject to and governed by Carmack cannot grant Coyote that right because the Carmack Amendment does not, by itself, grant Coyote that right. In fact, the BCA's paragraph on this issue provides that the broker "specifically reserve all rights and remedies" provided by the Carmack Amendment. If the Carmack Amendment itself does not provide the right to sue, then nothing is reserved by Coyote.

Moreover, other district courts in this circuit have persuasively found that the Carmack Amendment does not apply where a broker is suing a carrier pursuant to an agreement. *See TransCorr Nat. Logistics, LLC v. Chaler Corp.*, No. 1:08-CV-375-TAB-SEB, 2008 WL 5272895, at *4–5 (S.D. Ind. Dec. 19, 2008) (remanding the case because the broker's claims arose out of the brokerage agreement with carrier and because the broker was not a holder of the bill of lading or suing on behalf of its shipper-customer, so the lawsuit was not preempted by the Carmack Amendment and the court lacked subject matter jurisdiction over the state common law claims); *Keystone Logistics, Inc. v. Struble Trucking LLC*, No. 3:14CV1938, 2014 WL 6750052, at *3 (N.D. Ind. Dec. 1, 2014) (remanding the case because the Carmack Amendment preempts claims from bills of lading, but not other agreements, so the broker's claim seeking to recover on a contract was not preempted and there was no federal jurisdiction); *VPP Grp., LLC v. Total Quality Logistics, LLC*, No. 13-CV-185-WMC, 2014 WL 1515510, at *10–11 (W.D. Wis. Apr. 18, 2014) (finding the broker's contractual indemnification claims against the carrier were outside the scope of the Carmack Amendment).

Sunrise argues that "[w]hether Carmack applies is not about who is asserting the claim, but rather against whom the claim is asserted." Doc. [27] at 5. Sunrise relies on *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, to assert that Carmack preempts all common law theories of recovery against a carrier. 89 F.3d 452 (7th Cir. 1996). But *Van Lines* did not involve claims made by a broker against a carrier. In *Van Lines*, the Seventh Circuit held that the Carmack Amendment preempted all the shipper's state law remedies against the carrier for the loss of cargo. *Id.* at 457. It did not address whether the Carmack Amendment preempts a broker's claims. To further support its argument that Coyote's status as a broker is immaterial to the application of the Carmack Amendment, Sunrise relies on *Mach Mold Inc. v. Clover Assocs., Inc.*, 383 F. Supp. 2d 1015, 1029 (N.D. Ill. 2005). But *Mach Mold* is distinguishable because it involved a shipper suing a carrier and a party that claimed to be a carrier under the Carmack Amendment. *Mach Mold* does not stand for the proposition Sunrise advances, and in fact, it analyzed whether the defendants were brokers or carriers, noting that a broker is not liable under the Carmack Amendment. Accordingly, after reviewing the plain language of the Carmack Amendment, the cases cited by the parties, and the Seventh Circuit's holding in *REI*, the Court finds that Coyote's breach of contract claim is not preempted by the Carmack Amendment.

Sunrise separately contends that Coyote's claim should be dismissed because it failed to provide notice as required by the Carmack Amendment as described in Section 9 of the BCA. As discussed above, Coyote is not bringing this claim pursuant to the Carmack Amendment and is not bound by the notice requirements for Carmack Amendment claims. Further, under Illinois law a

colorable breach of contract claim requires the plaintiff to allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (citations omitted). As Coyote alleged the existence of the BCA, its performance under the BCA, Sunrise's failure to perform under the BCA, and the resulting damage to Coyote, it has sufficiently alleged an Illinois breach of contract claim to survive a motion to dismiss.

## Conclusion

For the reasons stated above, Sunrise's motion to dismiss [20] is denied.

**SO ORDERED.**

Dated: June 4, 2024

_____
Sunil R. Harjani
United States District Judge